

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD–0551–10

---

### WILLIAM THOMAS LEONARD, Appellant

### v.

### THE STATE OF TEXAS

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE ELEVENTH COURT OF APPEALS
### TARRANT COUNTY

---

**MEYERS, J., delivered the opinion of the Court in which KELLER, P.J., and KEASLER, HERVEY, and ALCALA, JJ., joined. HERVEY, J., filed a concurring opinion in which KELLER, P.J., and KEASLER, J., joined. COCHRAN, J., filed a dissenting opinion in which PRICE, WOMACK, and JOHNSON, JJ., joined.**

### O P I N I O N

Appellant, William Thomas Leonard, pleaded guilty to injury to a child and received five years' deferred adjudication and a $750 fine. The conditions of his community supervision included sex offender evaluation and counseling, and required that he submit to, and show no deception on, polygraph exams. After a hearing on the motion to adjudicate, the trial court found that Appellant had violated the terms of his

community supervision; he was adjudicated guilty and sentenced to seven years' confinement. He appealed. The court of appeals reversed the judgment of the trial court, holding that the trial court abused its discretion by considering evidence of Appellant's failed polygraph exams when determining whether to revoke his community supervision. *Leonard v. State*, 315 S.W.3d 578 (Tex. Crim. App. 2010). We granted the State's petition for discretionary review to consider whether the results of polygraph exams may be used for such purposes. We will reverse the court of appeals.

## FACTS

Appellant was indicted for aggravated sexual assault. He agreed to plead guilty to injury to a child and was placed on deferred-adjudication community supervision. Appellant also agreed to the conditions of community supervision, including that he complete sex offender evaluation and treatment and submit to polygraph exams, on which he was required to show no deception. The State filed a motion to proceed to adjudication, alleging that Appellant had been unsuccessfully discharged from treatment, failed to make satisfactory progress in treatment, failed to pass polygraph exams, and failed to pay fines. At the adjudication hearing, the State waived the failed polygraph and failure to pay fines allegations. Appellant pleaded not true to the allegations of being unsuccessfully discharged and to not making satisfactory progress in treatment. Over Appellant's proper objection, the State called the sex offender therapist who had been treating Appellant, psychotherapist George Michael Strain. Strain testified that Appellant

was discharged from treatment for failing five polygraphs. Strain further testified that the use of polygraph testing is a common part of sex offender treatment, and that test results are reasonably relied upon by experts in the field of sex offender treatment. Strain testified that the five failed polygraphs led him to feel that Appellant was not being honest with him and caused him to be concerned about the community's safety. Finally, Strain testified that he had no other concerns about Appellant's treatment and that the five failed polygraphs were the only basis for Appellant's discharge from treatment. The trial court found true the allegation that Appellant was unsuccessfully discharged from sex offender treatment and found Appellant guilty of injury to a child. He was sentenced to seven years' confinement.

Appellant appealed, claiming that the trial court erred in considering his polygraph results. The court of appeals agreed, holding that polygraph results were inadmissible for all purposes, and reversed the trial court's adjudication of guilt. The State filed a petition for discretionary review raising the following five grounds:

> 1. Did the Court of Appeals err in concluding that, in adjudication proceedings, a sex offender treatment provider was not permitted to testify to the results of polygraph examinations conducted as part of sex offender treatment, which were a condition of probation, and were admitted as a "fact or data" pursuant to Tex. R. Evid. 703 & 705(a) to support his expert's opinion as to why Appellant was terminated from the mandated sex offender treatment program?

> 2. Did the Court of Appeals err in concluding this Court's holding, "that the existence and results of a polygraph examination are inadmissible *for all purposes*," applies to situations under Tex. R. Evid. 703 & 705(a), when an expert, in an adjudication proceeding, considers those results as a basis for

rendering an expert opinion as to why a probationer was terminated from a court ordered sex offender treatment program?

3. Did the Court of Appeals err in ruling that this Court's holding in *Tennard v. State*, 802 S.W.2d 678, 683 (Tex.Crim.App. 1990), and its progeny takes precedence over Tex. R. Evid. 703 & 705(a) in an adjudication proceeding?

4. Did the Court of Appeals err in not holding that Tex. R. Evid. 703 & 705(a) take precedence over *Tennard v. State*, 802 S.W.2d 678, 683 (Tex. Crim. App. 1990) and its progeny?

5. Did the Court of Appeals err in holding that polygraph results are always inadmissible notwithstanding a valid condition of community supervision required that the Appellant submit to and show no deception on a polygraph examination and other diagnostic tests or evaluations as directed by the court or supervision officer?

## COURT OF APPEALS

Citing *Tennard v. State*, 802 S.W.2d 678, 683 (Tex. Crim. App. 1990), the court of appeals concluded that "Texas law is clear that the existence and results of a polygraph examination are inadmissible for all purposes." *Leonard*, 315 S.W.3d 578, 580. The court noted that polygraph exams are regularly imposed as a condition of community supervision for sex offenders, but the results of such exams are inadmissible due to their lack of reliability. *Id*. at 580, citing *Romero v. State*, 493 S.W.2d 206 (Tex. Crim. App. 1973). The court said that the ban on polygraph evidence is comprehensive and applies even to revocation proceedings. *Leonard*, 315 S.W.3d 578, 580, citing *Nesbit v. State*, 227 S.W.3d 64, 66 n. 4 (Tex. Crim. App. 2007). As a result, the court of appeals determined that the trial court did not have the discretion to consider the test results under

Rule 703.[1]  And, because the test results were the sole basis for Appellant's discharge from treatment, the court of appeals called the revocation a "trial by polygraph."  The court of appeals maintained that a trial court can still impose polygraph exams as a condition of community supervision and can revoke community supervision for refusing or failing to take a court-ordered polygraph.  *Leonard*, 315 S.W.3d at 581.  The court of appeals decided that the trial court abused its discretion by considering the evidence of failed polygraph exams and by revoking community supervision.  *Id*.

## ARGUMENTS OF THE PARTIES

The State argues that evidence regarding failed polygraph exams was admissible for two reasons: first, as a basis of the expert's opinion that Appellant should be discharged from the sex offender treatment program as a risk and danger to the community; and second, because it was a condition of Appellant's community supervision that he show "no deception" on polygraph exams.  If the results of polygraph testing were inadmissible, the State reasons that the condition would be a nullity.

The State says evidence of failed polygraphs should be admissible in this case under Rules of Evidence 702, 703, and 705.  Rule 702 allows an expert witness to testify as to his opinion.  Under Rule 705(b), a party can question the expert about the underlying facts or data upon which the opinion is based, and Rule 703 specifies that if the facts or data used to form the opinion are reasonably relied upon by experts in the field, the facts

---

[1]Unless otherwise noted, all references to Rules refer to Texas Rules of Evidence.

or data need not be admissible in evidence. The State says, "The rule specifically notes that the facts on which an expert bases his opinion need not be admissible in evidence." Strain was qualified as an expert in the field of sex offender treatment; he testified that polygraph exams are commonly used in sex offender treatment and are reasonably relied upon by experts in the field in forming opinions about whether a patient is complying with the treatment program. The State argues that Appellant was not discharged from treatment for failing polygraphs, rather he was terminated because he was not complying with the program and Strain's expert opinion was that Appellant was not disclosing information and was not being honest, which could put other children at risk. The State concludes that, "While polygraph results are inadmissible, it was permissible for Mr. Strain to utilize them as a basis to form an opinion that Appellant should be discharged from the sex offender program."

The State also asserts that polygraph exams were a reasonable condition of community supervision. Code of Criminal Procedure article 42.12, section 11, allows a trial judge to impose reasonable conditions such as those that are related to the crime, provide treatment for the accused, deter the accused from future crimes, and protect the public. Polygraph exams have been determined to be a reasonable condition of community supervision and probation. In order for polygraph exams to maintain their value for treatment, rehabilitation, and deterrence, it is not unreasonable for a trial court to expect a defendant to be truthful. Therefore, it was reasonable for the trial court to

include a condition that Appellant show no deception on the polygraph exams. Since "no deception" polygraph exams are a valid condition of community supervision, the results should be admissible in revocation hearings. The State cites cases from other jurisdictions where results of polygraph exams are admissible in revocation proceedings. The State says that "if the condition was valid, then evidence establishing its violations should be admissible."

Appellant objects to the creation of an exception to *Tennard*'s prohibition against the use of polygraph exams in criminal proceedings. Even when the State and defense agree to admissibility, results are still excluded. *Tennard* did not exempt probation-revocation hearings, rather it said polygraph exams were inadmissible "for all purposes," which is a straight-forward bar to the use of such evidence. Appellant states that it would not be logical or consistent to bar polygraph results from juries but allow judges to consider the evidence. Appellant notes concerns about the reliability and persuasiveness of polygraph results and claims that the trial court was unduly persuaded of Appellant's non-compliance with the conditions of probation based solely upon polygraph results. The trial court drew a distinction between admitting polygraph results to show truthfulness and considering the results as a basis for an expert opinion as to whether Appellant poses a risk to the community. Appellant says there is no difference because the polygraph technology is scientifically unreliable and should not be considered persuasive by a trier of fact. Appellant says polygraph results can be used as an

investigative or therapeutic tool, but should continue to be excluded for all purposes in criminal proceedings. He argues that it was reversible error for the trial court to consider his failed polygraph exams. Appellant admits that polygraph exams can still be a condition of community supervision and are still useful to "facilitate confessions, lead to additional evidence, both inculpatory and exculpatory, encourage pleas, and assist defense lawyers in ferreting out facts and encouraging candor on the part of their oft-times less than candid clients." Therefore, Appellant says it is groundless for the State to argue that, if results are not admissible, then the condition is invalid. Appellant says the State's position is that conditions of probation should supersede the well-established prohibition against the use of polygraph results in criminal proceedings, which would result in probation offices having the ultimate authority on what is admissible.

## ADJUDICATION HEARING

At the hearing, the defense filed a motion in limine seeking to exclude the polygraph evidence. The court denied the motion stating, "While I understand the polygraph itself, the results may not be admissible to prove that a person is or is not telling the truth, I think the fact that someone is taking their polygraphs and their results could be the basis of an expert's opinion." The defense disagreed, saying "I don't believe the results of the polygraph would be admissible for purposes of this Court making a determination as to whether a probationer should be adjudicated or revoked."

The trial court acknowledged that this Court has said that polygraph results are

inadmissible before a jury and asked the defense if there was a case saying that a judge cannot consider polygraph results as the basis of an expert's opinion in a revocation hearing. The defense had no such case, but argued that polygraph exams are "per se inadmissible in our criminal courts."

The court also asked if the defense thought it would be better for the expert to just say "I discharged him" without giving any reasons to the court, and for the court to adjudicate guilt because he was discharged even though no basis was given for the discharge. The trial judge said that "discharge is a violation of his probation, and if it's proved to me by a preponderance that your client was discharged, the Court has the ability, as you well know, to revoke his probation and send him to prison. Now, we can either explore the reasons for that or we cannot." The court concluded that even if the evidence was generally inadmissible, it was admissible as the basis of an expert's opinion.

> The Court fully understands the general inadmissibility of polygraphs; however, the Court feels that there is a distinction between admitting polygraphs outright to show that someone did or did not tell the truth and using them–considering them as the basis of an expert opinion as to whether someone poses a danger and a risk to this community, which is the Court's understanding of what the policy consideration at issue in this case is, is secret keeping and whether it can and should be allowed.

The court allowed Strain to testify. Strain said that he was concerned about whether Appellant was telling the truth, and his opinion was that Appellant was not being completely honest with him. The defense asked Strain if his opinion "rests entirely on the failure of the polygraphs" and he answered, "Yes, it does."

**CASELAW**

In *Romero v. State*, we held that polygraph results should not be received into evidence even if there had been a prior agreement or stipulation because "such stipulation does nothing to enhance the reliability of such evidence when offered by either side on the issue of the guilt or innocence of the accused." 493 S.W.2d at 213. *Romero* involved a jury trial in which the trial court failed to give an instruction to the jury that the polygraph evidence was not direct evidence of guilt, but evidence that tends to indicate only whether the subject was telling the truth when tested.

We later addressed whether a party could cross-examine a witness about the results of a polygraph exam that were referred to by another witness. *See Nethery v. State*, 692 S.W.2d 686 (Tex. Crim. App. 1985). We stated that the witness's "unwittingly-made remark about a polygraph does not mean that defense counsel, when examining a different witness, can ask that witness about the results of the polygraph. The testimony is not admissible and we have long held that to be the case." *Id*. at 700. Like *Romero*, the *Nethery* trial was before a jury.

In another jury trial, *Tennard v. State*, 802 S.W.2d 678, the original suspect in the case had implicated the defendant. During the arresting officer's testimony, the defense asked whether he believed statements made by the previous suspect. The officer responded that he believed the statements because the suspect had taken and passed a polygraph exam. Following *Nethery*, we stated that "The existence and results of a

polygraph examination are inadmissible for all purposes." However, because the witness whose polygraph results were revealed to the jury was neither the sole witness nor even a crucial witness, we held that the error did not contribute to the verdict or punishment. *Tennard*, 802 S.W.2d at 684.

The court of appeals relied on *Nesbit*, 227 S.W.3d 64, for the proposition that polygraph results are not admissible in revocation hearings. In *Nesbit*, the State filed a motion to revoke the appellant's probation based in part on an entry in his probation file that he had failed a sex offender polygraph test. While we did state in a footnote that "neither the results of a polygraph test nor the 'fact' of failing a polygraph test are admissible in a Texas criminal proceeding," the issue in *Nesbit* was the timing of the filing of the motion to revoke, not the use of polygraph results. 227 S.W.3d at 66 n.4 (citing *Nethery*, 692 S.W.2d at 700).

## ANALYSIS

**Condition of Community Supervision**

When a defendant is placed on community supervision, Code of Criminal Procedure article 42.12, section 11(a), allows a judge to "impose any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant." For sex offenders, section 11(i) specifies that conditions may include supervision according to the offense-specific standards of practice adopted by the Council on Sex Offender Treatment, which includes use of

polygraph exams.[2]  Polygraph exams serve to establish treatment progress, to determine

honesty and openness to treatment, to monitor compliance with the treatment program,

and to deter and prohibit similar conduct while in treatment.[3]  Here, the polygraph exams

taken by Appellant were used only for treatment purposes.  Because he showed deception

on five of the exams, he was discharged from the treatment program; and, due to his

unsuccessful completion of the treatment program, his community supervision was

revoked.  Thus, while the polygraph results may have been used as "evidence" in the

revocation hearing, it was as evidence only that Appellant did not comply with or

progress in the treatment program and not as evidence of guilt of the original offense.

We note that we have held that an appellant may not complain on appeal about a

condition of community supervision to which he agreed.  *Speth v. State*, 6 S.W.3d 530

(Tex. Crim. App. 1999).  We stated,

> An award of community supervision is not a right, but a contractual
> privilege, and conditions thereof are terms of the contract entered into
> between the trial court and the defendant.  Therefore, conditions not
> objected to are affirmatively accepted as terms of the contract.  Thus, by
> entering into the contractual relationship without objection, a defendant
> affirmatively waives any rights encroached upon by the terms of the
> contract.

*Id.* at 534.  However, here, Appellant did not object to the requirement that he take and

---

[2] Appellant was originally charged with aggravated sexual assault, but agreed to plead guilty to injury to a child.  He conceded that polygraph exams were a reasonable condition of community supervision in this case.  *Leonard*, 315 S.W.3d at 580.

[3] As noted by Appellant, polygraph exam results are also useful for police during the investigation of crimes.

pass polygraph exams as a condition of his community supervision and even agreed that taking polygraph exams was a reasonable condition.

**Adjudication Hearings**

We have not directly considered whether polygraph results are admissible in a community-supervision revocation hearing. A revocation hearing is an administrative proceeding and is neither a criminal nor a civil trial. *See Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). Texas Code of Criminal Procedure article 42.12, section 21(b), specifies that, when a condition of community supervision is violated, the judge shall conduct a hearing without a jury to determine whether to continue, extend, modify, or revoke community supervision. Even though revocation of community supervision may result in the defendant's loss of liberty, a revocation hearing does not involve findings of guilt; rather it is a forum in which the judge decides whether the defendant has broken the contract he made with the court after a determination of guilt has already been made. While the rules of evidence and procedure generally apply to revocation hearings, evidence not normally admissible at a trial can be presented to the judge at a revocation hearing. And, because the judge is not determining guilt, the standard of proof is lower than in a criminal trial; the State must prove by a preponderance of the evidence that the conditions of community supervision were violated.

Conversely, the cases relied upon by the court of appeals, *Romero*, *Nethery*, and *Tennard*, each involved a jury trial. In *Romero*, we stated, "No machine or device has

perhaps caused greater controversy among 'experts', judges, lawyers, physicians, psychologists, government officials, and the public in general than the polygraph or lie-detector machine." 493 S.W.2d at 209. Some of the underlying issues with the use of polygraph results are: the polygraph's reliability in determining guilt, the jury's difficulty in interpreting the results, and the tendency to treat the results as conclusive evidence of guilt. *Id*. at 211. *Romero* suggests that polygraph results may be admissible if, among other qualifications, the jury is instructed that such evidence is not direct evidence of guilt, but evidence that tends only to indicate whether the subject was telling the truth at the time of the exam. *Id*. at 212-13. Most of the problems usually associated with the admissibility of polygraph exam results are not present in a community-supervision revocation hearing. In such an administrative hearing, the polygraph results are not used to establish guilt of the original offense, there is no jury to be confused or to overvalue the results, and the judge is not deciding guilt. In the case before us, the judge even acknowledged the general concerns with polygraph evidence and noted the distinction between evidence of guilt and evidence of truthfulness when tested. The polygraphs were not attempting to determine whether Appellant had committed the original offense to which he had pled guilty, they were used to determine whether he was being truthful in sex offender treatment. Strain testified that Appellant had never taken a polygraph for the originally charged offense and that he had admitted to the offense. We continue to support our precedent that polygraph results are inadmissible before a jury. However, the

dangers of undue influence by polygraph results are not present in a revocation hearing such as this. We acknowledge that the problem of polygraph reliability may remain even in a revocation hearing. However, the fact that Appellant failed five polygraph exams before the State moved to adjudicate guilt indicates to us that the results in this case remained consistent.

**Basis for Expert Opinion**

Even generally inadmissible facts or data may be used by an expert in forming an opinion, as long as the facts or data are of a type reasonably relied upon by other experts in the field.[4] As discussed above, polygraph exams are reasonably relied upon by experts in sex offender psychotherapy. As such, Rule 703 permits Strain to rely on polygraph results in forming his expert opinion that Appellant should be discharged from the sex offender treatment program.

While Rule 703 allows experts to rely on inadmissible evidence in forming an opinion, Rule 705 dictates whether the basis for the opinion is disclosed to the court. Under Rule 705(a): "The expert may testify in terms of opinion or inference and give the expert's reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data." Thus, Rule

---

[4]Rule 703 states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by, reviewed by, or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

705(a) allows Strain to disclose that the failed polygraphs were the basis for his opinion. Put simply, Rule 703 allows Strain to say, "I discharged the defendant because I felt that he was being dishonest," and under Rule 705(a), he may add, "I felt he was being dishonest because he failed the mandated polygraphs exams."

We also note that the rest of Rule 705 is concerned with the disclosure of the facts and data to the jury. By requiring a requested voir dire examination of an expert outside the presence of the jury, Rule 705(b) indicates that the jury's exposure to inadmissible evidence is one of the main concerns with allowing testimony regarding the underlying facts or data upon which the expert's opinion is based and also indicates that the point of voir dire is for the judge to make this decision. Subsection (c) says that an expert's opinion may be inadmissible if the court determines that the underlying facts or data do not provide a sufficient basis for the opinion; and subsection (d) provides for a balancing test to determine whether the danger that the facts or data will be used for a purpose other than as the basis for the expert's opinion outweighs the value as explanation or support, and also says that a requested limiting instruction shall be given to the jury.

In a community-supervision revocation hearing, where there is no jury, polygraph results may be admissible as the basis for an expert opinion under Rules 703 and 705(a).

Finally, we have set out a hierarchy for situations in which there is a conflict between the caselaw and our rules. Rule of Evidence 101(c) states that, in criminal cases, "[h]ierarchical governance shall be in the following order: the Constitution of the United

States, those federal statutes that control states under the supremacy clause, the Constitution of Texas, the Code of Criminal Procedure and the Penal Code, civil statutes, these rules, and the common law. Where possible, inconsistency is to be removed by reasonable construction."

The court of appeals erred in holding that *Tennard*'s ban on polygraph evidence applies to expert opinions under Rules 703 and 705(a) in community-supervision revocation hearings.

## CONCLUSION

Because adjudication hearings are administrative proceedings, in which there is no jury and the judge is not determining guilt of the original offense, we hold that the results of polygraph exams are admissible in revocation hearings if such evidence qualifies as the basis for an expert opinion under Texas Rules of Evidence 703 and 705(a).

The court of appeals is reversed.

Meyers, J.

Delivered: March 7, 2012
Publish